IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

A.H.,

Plaintiff,

v.

SCHOOL DISTRICT OF PHILADELPHIA,

Defendant.

CIVIL ACTION
NO. 22-4460

## OPINION

**Slomsky, J.**                                               **August 30, 2023**

### TABLE OF CONTENTS

I.   **INTRODUCTION** ........................................................................................... 1

II.  **BACKGROUND** ............................................................................................ 3

   A.   **Plaintiff's Evaluations, Individualized Education Plan Meetings, and Due Process Hearing Before Independent Hearing Officer Cheryl Cutrona** .................... 3

   B.   **Plaintiff's Complaint and Motion for Judgment on the Administrative Record** ....... 8

   C.   **District's Motion for Judgment on the Administrative Record** ................................. 9

III. **STANDARD OF REVIEW** .......................................................................... 10

IV.  **ANALYSIS** .................................................................................................. 11

   A.   **Individuals with Disabilities Education Act** ................................................ 12

   B.   **Independent Hearing Officer Cheryl Cutrona's Final Decision and Order** ............ 16

   C.   **Plaintiff Is Not Entitled to a Independent Educational Evaluation at Public Expense** ....................................................................... 18

1.   The Hearing Officer Did Not Ignore Policy 113.3 or the Testimony
     of the District's Director of Special Education ............................................... 19

2.   Productive Discussions Occurred Between the District and the Parents ...................... 21

3.   The Hearing Officer's Error in Concluding the District Timely Conducted
     the January 14, 2022 Reevaluation Did Not Result in Plaintiff
     Being Denied a FAPE ................................................................................................. 22

**V.  CONCLUSION** ............................................................................................................. 25

I.      **INTRODUCTION**

Presently before the Court are Cross-Motions for Judgment on the Administrative Record in a case challenging a decision of a Pennsylvania Special Education Hearing Officer.  (Doc. Nos. 16, 17.)  On December 10, 2018, while Plaintiff was enrolled in kindergarten within the boundaries of Defendant School District of Philadelphia (the "District"), the District evaluated her pursuant to the Individuals with Disabilities Education Act (the "IDEA") to determine whether she had a disability that qualified her for special education and related services. Although the District was required under the IDEA to do her triannual reevaluation by December 10, 2021, it issued a Reevaluation Report on January 14, 2022 and amended it on March 30, 2022.  On May 9, 2022, disagreeing with the findings in the reevaluations, Plaintiff's parents requested the District to conduct a free independent educational evaluation ("IEE").  On July 6, 2022, fifty-eight (58) days after the parents requested the IEE, the District filed a due process complaint with the Pennsylvania Officer for Dispute Resolution, in which the District alleged that Plaintiff was not entitled to an IEE at public expense.  Plaintiff contends here, among other things, that the two delays—one from December 10, 2021 to January 14, 2022 and the other from May 9, 2022 to July 6, 2022—deprived her of a free appropriate public education ("FAPE").

In its July 6, 2022 due process complaint, the District asserted that Plaintiff was not entitled to an IEE at public expense and that its delay in filing the complaint was not unreasonable.  Plaintiff asserts, however, that the District's delay in completing its required triannual reevaluation of Plaintiff and its fifty-eight (58) day delay in acting on her request for an IEE deprived her of a FAPE under the IDEA.  On August 2, 2022, a due process hearing was held before Special Education Hearing Officer Cheryl Cutrona, J. D.  On August 11, 2022, the

Hearing Officer issued a decision agreeing with the District that Plaintiff was not entitled to an IEE at public expense and the District did not act unreasonably in the delay in filing the due process complaint.  The Hearing Officer also found that the District's delay in conducting the triannual reevaluation did not result in a substantive denial of a FAPE to Plaintiff.

On November 8, 2022, Plaintiff initiated this action in this Court, seeking review of the Hearing Officer's decision.  (Doc. No. 1.)  On February 15, 2023, the Administrative Record from the Pennsylvania Department of Education, Office of Dispute Resolution, was filed in this case.  (Doc. No. 11.)   The exhibits contained in the Administrative Record include (1) a December 10, 2018 Reevaluation Report, (2) a January 14, 2022 Reevaluation Report, (3) a March 30, 2022 Amended Reevaluation Report, (4) the due process complaint filed by the District on July 6, 2022, (5) the transcript of the proceedings before the Hearing Officer, and (6) the Hearing Officer's decision.  (See id.)

On April 3, 2023, the parties filed Cross-Motions for Judgment on the Administrative Record.  (Doc. Nos. 16, 17.)  On April 24, 2023, both parties filed Responses in Opposition to the respective Motions for Judgment on the Administrative Record as well as Responses to the Statements of Undisputed Facts in each respective Motion.  (Doc. Nos. 18, 19, 20, 21.)  On May 8, 2023, the parties filed Replies.  (Doc. Nos. 22, 24.)

The Cross-Motions for Judgment on the Administrative Record are now ripe for review. For reasons stated infra, the District's Motion for Judgment on the Administrative Record (Doc. Nos. 16) will be granted and Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) will be denied.

## I.       BACKGROUND

### A.       Plaintiff's Evaluations, Individualized Education Plan Meetings, and Due Process Hearing Before Independent Hearing Officer Cheryl Cutrona

While Plaintiff A.H. was enrolled in the School District of Philadelphia (the "District) in a higher grade, she first enrolled in the District as a kindergartner.  (See Doc. No. 16-3 at 1.)  On December 10, 2018, when Plaintiff was in kindergarten, the District conducted a psychological evaluation of her and issued a Report in which the District found her eligible to receive special education services based on her primary and secondary disability classifications of Specific Learning Disability and Speech or Language Impairment, respectively.  (See id. at 1-2.)  The psychologist conducting the evaluation determined that Plaintiff did not have an intellectual disability.  (Id. at 5-6.)  Pursuant to the individualized education plan ("IEP") that it developed for Plaintiff, the District provided her with about seven and a half hours of learning support services per week.  (See id. at 2.)  In addition, in the beginning stages of the COVID-19 pandemic, Plaintiff received virtual instruction during parts of her first and second grades.  (See id.)

On January 14, 2022, over one month past the three-year deadline imposed by the IDEA, see 20 U.S.C. § 1414 (a)(2)(B)(ii),[1] Plaintiff was reevaluated by the District while she was

---

[1]   Under the IDEA:

> (A) . . . A local educational agency shall ensure that a reevaluation of each child with a disability is conducted in accordance with subsections [pertaining to procedures and other requirements for evaluations and reevaluations].
> . . .
> (B) Limitation.  A reevaluation conducted under subparagraph (A) shall occur—
> > . . .
> > (ii) at least once every 3 years, unless the parent and the local educational agency agree that a reevaluation is unnecessary.

20 U.S.C. §§ 1414(a)(2)(A), (B)(ii).

enrolled in the third grade.  (See id.)  The District issued a psychoeducational evaluation report relying, in part, on Plaintiff's prior evaluation, grades, benchmark testing reflecting her performance level compared to her peers, and her parent's input.  (See id.)  One benchmark test showed that Plaintiff was performing significantly lower in all academic areas compared to her peers who were the same age and in the same grade as her.  (See id.)  After reviewing the January 14, 2022 reevaluation report which did not include a speech evaluation, Plaintiff's mother requested additional testing.  (See id.)

As a result of this request, Dr. Jessica Rankin, a certified school psychologist, conducted a second reevaluation assessment to measure Plaintiff's current cognitive functioning and executive functioning skills, to determine if she still was a "child with a disability" under the IDEA, and to assess whether her current IEP was meeting her educational needs.  (See id. at 3.) Dr. Rankin's methodology for the reassessment included reviewing Plaintiff's academic records, listening to input from her parents, observing her in two testing sessions and in a math class with her peers, and collecting data regarding her educational levels measured through several cognitive tests used by school psychologists to assess a students' academic achievement.  (See id. at 3-5.)  The results of these tests demonstrated that Plaintiff performed at a significantly lower level than her peers in many areas, including intelligence quotient (IQ) and working memory, as well as in various school subjects like reading, math, spelling, and writing.  (See id.)

After conducting one of the cognitive tests, Dr. Rankin contacted Plaintiff's parents to obtain additional information and to receive input from them.  (See id. at 4.)  Plaintiff's mother was concerned about her daughter's academic performance.  (Doc. No. 21 at 2.)  The mother believed that her daughter's decreasing performance might have been affected by the COVID-19

related transition to virtual learning.  (Id.)  Additionally, Plaintiff's mother expressed concern with her daughter's developmental delays.  (Id.)

Thereafter, Dr. Rankin did occupational therapy and speech evaluations with Plaintiff.[2] (Doc. No. 16-3 at 5.)  Based on all these findings, the District concluded that Plaintiff met the criteria for intellectual disability and included these findings in its March 30, 2022 amended reevaluation report.  (See id. at 6.)  The reevaluation report also noted that Plaintiff's primary disability classification was intellectual disability, a classification with which the parents disagreed.  (See id.; Doc. No. 21 at 3.)

On May 9, 2022, an IEP meeting was held between the parents and the District.  (See Doc. No. 16-3 at 7.)  At the meeting, various concerns were discussed and certain changes to the proposed IEP were requested.  (See id.)  After the meeting, the parents requested that the District pay for IEEs in two areas:  (1) speech and language and (2) psychoeducational.  (See id.)  On May 20, 2022, the parents' counsel emailed the District to set up a second IEP meeting and noted that the parents intended to seek compensatory education.[3]  (See id. at 7-8.)  The parties then

---

[2]  Defendant contends that it included in its Reevaluation a language evaluation.  (Doc. No. 16-3 at 5.)  Plaintiff disagrees, asserting that because the District agreed to fund "an independent speech and language evaluation" and the Reevaluation "only consisted of assessments in articulation and did not include any language testing whatsoever," the Reevaluation "was not appropriate."  (Doc. Nos. 1 at 6-7; 21 at 3.)  Plaintiff's argument about the extent of the testing does not mean that language evaluation was not considered by the District, which it was.

[3]  ". . . [A]n award of compensatory education allows a disabled student to continue beyond age twenty-one in order to make up for the earlier deprivation of [a FAPE]."  DeFlaminis, 480 F.3d at 272 (quoting Ridgewood Bd. of Educ., 172 F.3d 238, 249 (3d Cir. 1999)).  However, compensatory education is not available where a plaintiff alleges only procedural violations of the IDEA.  See C.H. v. Cape Henlopen Sch. Dist., 606 F.3d 59, 66 (3d Cir. 2010) ("[A] plaintiff alleging only that a school district has failed to comply with a procedural requirement of the IDEA, independent of any resulting deprivation of a FAPE, may only seek injunctive relief for prospective compliance.") (citing P.P. v. West Chester Area Sch. Dist., 585 F.3d 727, 738) (3d Cir. 2009) (citation omitted)).

5

agreed to have their second IEP meeting on June 3, 2022.  (See id. at 8.)  On June 1, 2023, two days prior to the meeting, the District granted the parents' request for a speech and language IEE, but denied the request for a psychoeducational IEE, noting that its March 30, 2022 amended reevaluation was "appropriate and defensible."  (Id.)[4]

On June 3, 2022, the parties met for the second IEP meeting.  (See id.)  During the meeting, the parents requested additional changes to the IEP's stated goals, additional goals, and other modifications.  (See id.)  On June 14, 2022, the District sent to the parents and their counsel the revised IEP.  (See id.)  Included in the IEP is a provision that Plaintiff will receive twenty-five hours and forty-five minutes per week of specialized instruction along with occupational and speech therapy services.  (See id. at 8-9.)  Because the parents maintained their request that the District issue another psychoeducational IEE, they requested an update on whether the District will file a due process complaint on June 27, 2022.  (See id. at 10.)[5]  The District filed the due process complaint on July 6, 2022.  (See id.)  In this complaint, the District asserted that the psychoeducation evaluation contained in its March 30, 2022 reevaluation was

---

[4]  On June 1, 2022, the District also noted that it would file a due process complaint "the next week."  (Doc. No. 17-3 at 2.)

[5]  Under 34 C.F.R. § 300.502:

> If a parent requests an [IEE] at public expense, the public agency must, without unnecessary delay, either—
>
> > (i) File a due process complaint to request a hearing to show that its evaluation is appropriate; or
> >
> > (ii) Ensure that an [IEE] is provided at public expense, unless the agency demonstrates in a hearing . . . that the evaluation obtained by the parent did not meet agency criteria.

34 C.F.R. § 300.502(b)(2)(i)-(ii).

appropriate and that it was not obliged to provide any further taxpayer-funded evaluations.  (See id.)

On August 2, 2022, a due process hearing was held before Independent Hearing Officer Cheryl Cutrona ("IHO Cutrona").  (See id. at 10-11.)  At the hearing, the District's Director of Special Education acknowledged the District's School Board Policy 113.3 regarding the District's handling of IEE requests made by parents.[6]  (See Doc. No. 1 at 8.)  On August 11, 2022, IHO Cutrona concluded that the District had established that its March 30, 2022 psychoeducational evaluation was appropriate and that its delay in filing the July 6, 2022 due process complaint was not unreasonable.  (See Doc. No. 16-3 at 11.)  On September 28, 2022, Plaintiff filed a separate due process complaint against the District seeking compensatory education.[7]  (See id.)

---

[6]  Policy No. 113.3 provides, in relevant part, as follows:

> Within ten (10) school days of receipt of a request for an independent educational evaluation in writing from a parent/guardian, the District shall either initiate a due process hearing to show that the District' evaluation is appropriate and notify the parent/guardian in writing that the District has done so or issue to the parent/guardian correspondence containing [information about conducting a reevaluation] . . . .

Policy No. 113.3, Screenings and Evaluations for Students with Disabilities, The School District of Phila. (Apr. 21, 2021), available at https://www.philasd.org/schoolboard/wp-content/uploads/sites/892/2021/04/policy_113.3_screening-and-evaluations-for-students-with-disabilities-4.21.21-1.pdf.  Plaintiff contends that the District failed to initiate a due process hearing within ten days of her request for an IEE in violation of Policy No. 113.3.

[7]  On March 17, 2023, a hearing on this due process complaint was held.  (See Doc. No. 16-3 at 11.)  A decision was scheduled to be issued by May 17, 2023, but the parties have not provided this Court with any decision.  (See Doc. No. 21 at 6.)

B.      Plaintiff's Complaint and Motion for Judgment
        on the Administrative Record

On November 8, 2022, Plaintiff filed the operative Complaint in this case appealing IHO

Cutrona's decision.  (See Doc. No. 1.)   Plaintiff contends that the IHO Cutrona made the

following legal errors:

> 44.   The IHO [Independent Hearing Officer], without explanation, did not
> consider the District's Policy 113.3 and did not consider the Director of Special
> Education's testimony whatsoever in the August 11, 2022 Decision.
>
> 45.   The IHO wrongly decided that "productive discussions and changes to the
> IEP were being made based on the District's RR [Reevaluation Report]."  In fact,
> Parents never agreed to any of the IEP changes and subsequently filed a due
> process complaint on September 28, 2022 because of the District's ongoing denial
> of a Free Appropriate Public Education.
>
> 46.   The IHO, without explanation, failed to consider the District's failure to
> complete a Reevaluation Report by the triannual due date of December 10, 2021.
>
> 47.   The IHO wrongly decided that the procedural deficiencies did not result in a
> substantive denial of a Free Appropriate Public Education and wrongly decided
> that the procedural deficiencies did not impede meaningful participation of
> Parents.  A.H. has suffered for years because of the District's denial of FAPE with
> inappropriate IEPs.   The District's timeliness violations directly impacted
> Parents['] ability to attempt to remedy the denial of FAPE.

(Id. at 8-9.)

These allegations are included in Plaintiff's Motion for Judgment on the Administrative

Record.  (See Doc. No. 17-2 at 5-10.)  In her Motion, Plaintiff asserts that the District violated

her rights under the IDEA and 22 Pa. Code § 14.102, which adopts IDEA requirements.  (Id. at

10.)  Specifically, Plaintiff claims that Defendant violated the IDEA's procedural requirements

and, as a result, her right to a FAPE.  She alleges the following:

> In this case, Parents had concerns regarding A.H.'s educational program.   In
> response to a request to hold an IEP meeting by the school in January 2022,
> Parent asked about the status of the evaluation.  . . .  When told that the school
> psychologist only did a review of records, Parents asked for testing.  . . .  In the
> parent input, Parent indicated her concern that she did not believe A.H. was

8

receiving the help she needs, and she needs "way more support than what is given." . . . In response to the question, "What progress have you seen your child make over the past few years", Parent responded, "Not much." . . . The special education teacher's input into the Reevaluation Report supports Parent's input as the teacher wrote, "[A.H.] struggles with basic math skills, such as single digit addition and subtraction.  She is learning more sight words but struggles with phonemic awareness." . . . A.H. was in the middle of third grade at that time. . . . The District's failure to timely complete the triannual evaluation rises to a substantial denial of FAPE as it impeded Parents' ability to timely and meaningfully participate in the IEP process.

When a student is struggling to learn basic math skills and struggling to learn to read in third grade, a timely reevaluation is essential.  Failing to complete a timely reevaluation report, given A.H.'s ongoing needs and struggles, which included behaviors, executive functioning, speech and language, and occupational therapy needs in addition to the academic needs, severely impaired Parents' ability to meaningfully participate.  Rather than having an IEP meeting in December 2021 to change A.H.'s program and placement, the IEP was not changed until several months later.

(Id. at 9-10.)

As a result of these alleged violations, Plaintiff "ask[s] the Court to order the District fund an IEE because of the District's violation of the IDEA and Pennsylvania Chapter 14 regulations of the triannual timelines for reevaluations." (Id. at 10.)

### C.    District's Motion for Judgment on the Administrative Record

In the District's Motion for Judgment on the Administrative Record, it submits that it acted on the parents' request for an IEE without "unreasonable delay."  After several weeks of dialogue between the District and the parents, the District maintains it received a request to file a due process complaint on June 27, 2022.  (Doc. No. 16-1 at 7-8.)  The District then filed the due process complaint eleven (11) days later on July 6, 2022."  (Id. at 8.)  The District therefore maintains that the Hearing Officer's findings on delay in filing the due process complaint was correct.  (Id. at 8, 11.)  The District also argues that any procedural violations of the IDEA, such as the short delay in doing the triannual reevaluation, did not deprive Plaintiff of a FAPE because

"the record is devoid of any such evidence" that a procedural violation "resulted in a substantive denial of FAPE." (Doc. No. 24 at 5.) In addition, the District argues that contrary to Plaintiff's assertions, the parents were "engaged in meaningful participation throughout the evaluation and IEP process." (Id. at 5-6.)

## II.   STANDARD OF REVIEW

Because parents and educators sometimes disagree about what a child's Individualized Education Plan, or IEP, should contain, the IDEA has established procedures to resolve disputes. See Endrew F. v. Douglas Cnty. Sch. Dist. RE-1, 580 U.S. 386, 391-92 (2017). "There are congressionally mandated administrative procedural safeguards to resolve disagreements between parents and school districts over the proper IEP for a child or other FAPE-related disputes." Adult Q.T. v. Pottsgrove Sch. Dist., 70 F.4th 663, 664-65 (3d Cir. 2023) (citing C.H., 606 F.3d at 65 (quoting 20 U.S.C. § 1412(a)(1)(A)). The parties may resolve their differences informally, through a "[p]reliminary hearing," or, more formally, through mediation. 20 U.S.C. §§ 1415(e), (f)(1)(B)(i). Additionally, the parties may proceed to a "due process hearing" before a state or local educational agency. Id. §§ 1415(f)(1)(A), (g).

At the conclusion of the state due process hearing, the IDEA permits the losing party to appeal the decision to state or federal court, id. § 1415(i)(2)(A). The district court reviews the record of the administrative proceeding, hearing additional relevant evidence at the request of a party, and, based on a preponderance of the evidence, grants appropriate relief. § 1415(i)(2)(C); Susan N. v. Wilson Sch. Dist., 70 F.3d 751, 760 (3d Cir. 1995). The district court gives "due weight" to the hearing officer's decision. Bd. of Educ. of Hendrick Hudson Central Sch. Dist., Westchester Cnty. v. Rowley, 458 U.S. 176, 205-06 (1982).

10

Affording "due weight" to the hearing officer's decision requires a district court to conduct a "modified de novo review" of the administrative proceedings.  Q.T., 70 F.4th at 666 (citing P.P., 585 F.3d at 734).  The United States Supreme Court has construed 20 U.S.C. § 1415(i)(2)(C) to require that district courts be careful to avoid replacing its "own notion[] of sound educational policy for those of the school authorities [that] they review."  Rowley, 458 U.S. at 206.  As such, "'[f]actual findings from the administrative proceedings are to be considered prima facie correct,' and if the reviewing court does not adhere to those findings, it is 'obliged to explain why.'"  Q.T., 70 F.4th at 666 (quoting P.P., 585 F.3d at 734) (citation omitted).  "Taking the [hearing officer's] factual findings as prima facie correct, [a court] must decide whether the record contradicts those factual findings."  S.H. v. State-Operated Sch. Dist., 336 F.3d 260, 271 (3d Cir. 2003).  But the legal determinations of the hearing officer are subject to plenary review by the district court.  See A.C. v. Owen J. Roberts Sch. Dist., 554 F. Supp. 3d 620, 624 (E.D. Pa. 2021) (citing S.H., 336 F.3d at 271)).

### III.   ANALYSIS

As noted earlier, Plaintiff identifies four legal errors committed by the Hearing Officer.  First, she argues that the Hearing Officer did not consider (a) the District's School Board Policy 113.3, which covers when the District must respond to requests for an IEE, and (b) the District's Director of Special Education's testimony acknowledging Policy 113.3.  (Doc. No. 1 at 8.)  Second, she asserts that the Hearing Officer's finding that "productive discussions and changes to the IEP were being made based on the District's [Reevaluation Report]" was incorrect because her parents "never agreed to any of the IEP changes" and eventually filed a due process complaint.  (Id.)  Third, she argues that the Hearing Officer "failed to consider the District's failure to complete a Reevaluation Report by the triannual due date of December 10, 2021."

(Id.)   Fourth, Plaintiff contends that the Hearing Officer's conclusion that no procedural deficiency denied her a free appropriate public education was incorrect.  (Id. at 9.)

None of these assertions, however, merit judgment in Plaintiff's favor on the administrative record.  But before addressing the merits of Plaintiff's arguments, a robust discussion of the IDEA is warranted.

### A.      Individuals with Disabilities Education Act

Through the Individuals with Disabilities Education Act ("IDEA"), the federal government provides States with federal funds to assist in educating children with disabilities. 20 U.S.C. § 1400, et seq.  This funding is conditioned upon compliance with certain statutory requirements, including the requirement that States provide a free appropriate public education, or FAPE, to each eligible child.  Endrew F., 580 U.S. at 390 (citing 20 U.S.C. § 1412(a)(1)). Under IDEA, a FAPE includes "special education" and "related services."  20 U.S.C. § 1401(9). A "special education" is "specially designed instruction . . . to meet the unique needs of a child with a disability."  Id. § 1401(26).  "Related services" are the support services "required to assist a child . . . to benefit from" that instruction.  Id. § 1401(29).  In exchange for receiving federal funds under the IDEA, a State must provide a disabled child with special education and related services "in conformity with the [child's] individualized education program," or IEP.  Endrew F., 580 U.S. at 390-91 (quoting 20 U.S.C. § 1401(9)(D)).

The Supreme Court has said that the IEP is "the centerpiece of the statute's education delivery system for disabled children."  Endrew F., 580 U.S. at 391 (quoting Honig v. Doe, 484 U.S. 305, 311 (1988)).  The IEP is the vehicle through which special education and related services are "tailored to the unique needs of" a particular child.  Rowley, 458 U.S. at 181.  The IDEA requires that each IEP includes a written statement of the child's present level of academic

achievement and functionality, annual goals, a description of how the child's progress towards those goals will be measured, and a description of related services and supplementary aids necessary to effectuate the special education needed.

Under the IDEA, a state educational agency ("SEA") is charged with overall compliance with the statutory requirements. 20 U.S.C. § 1401(32). In turn, the SEA delegates authority to conduct initial evaluations and reevaluations of a child's eligibility to receive special education to a local educational agency ("LEA"), usually a school district, which also receives federal funding for complying with the IDEA. Id. §§ 1401(19), 1414(a). As a condition of receiving federal funding, each LEA, at the beginning of each school year, is required to develop and implement an IEP for each child with a disability who resides within the LEA's jurisdiction. Id. § 1414(d)(2)(A).

As an initial matter, LEAs must conduct an initial evaluation to determine whether a child qualifies under the IDEA for special education and related services. Id. § 1414(a)(1)(A). Generally, a LEA must conduct its initial evaluation "within 60 days of receiving parental consent for the evaluation." Id. § 1414(a)(1)(C)(i)(I). Under the IDEA, a child with a disability is a child

> (i) with intellectual disabilities, hearing impairments (including deafness), speech or language impairments, visual impairments (including blindness), serious emotional disturbance (referred to in this title as "emotional disturbance"), orthopedic impairments, autism, traumatic brain injury, other health impairments, or specific learning disabilities; and

> (ii) who, by reason thereof, needs special education and related services.

Id. § 1401(3)(A)(i)-(ii). In addition to its obligations to conduct an initial evaluation, a LEA must conduct a reevaluation to ensure that the child "continues to need special education and related services." 34 C.F.R. § 300.305(a)(2)(iii)(B). A LEA must conduct a reevaluation "at

least once every 3 years, unless the parent and the local education agency agree that a reevaluation is unnecessary." 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303(b)(2). Moreover, a child's parent or teacher also can request a reevaluation regardless of the IDEA's triannual reevaluation requirement. See 34 C.F.R. § 300.303(a)(2) ("A public agency must ensure that a reevaluation of each child with a disability is conducted . . . [i]f the child's parent or teacher requests a reevaluation."); Z.B. v. Chambersburg Area Sch. Dist., 2023 WL , (M.D. Pa. Jan. 24, 2023 ("Under the IDEA and Pennsylvania's implementing regulations, most students are required to be re-evaluated every three years. 22 Pa. Code § 14.124(b) (incorporating 34 C.F.R. § 300.303 by reference).").

Pennsylvania adopts the IDEA's triannual reevaluation requirement and includes a sixty (60) day period from the date a parent requests a reevaluation of his or her child for a school district to conduct a reevaluation. See 22 Pa. Code § 14.124(b). Specifically, 22 Pa. Code § 14.124(b) states: "In addition to the requirements incorporated by reference in 34 CFR 300.303, the reevaluation timeline will be 60-calendar days . . . ." Id.[8] As the court in M.D. v. Colonial Sch. Dist. put it:

> Pennsylvania's implementing regulations require the initial evaluation to be conducted within 60 days of receiving written parental consent for the evaluation. 22 Pa. Code § 14.123(b); see also 34 C.F.R. § 300.301(c)(1).

> After this initial evaluation, a child is to be re-evaluated at least once every three years, unless both parents and the local agency determine it is unnecessary. 20 U.S.C. § 1414(a)(2)(A). The same 60-day timeline applies to complete a re-evaluation. 22 Pa. Code § 14.124(b); see also 34 C.F.R. § 300.303.

---

[8] "Although federal regulations apply the 60-day timeline [in which to conduct an evaluation upon a parent's consent] only to initial evaluations, Pennsylvania regulations extend this deadline to reevaluations. See 22 Pa. Code § 14.124." M.Z. v. Bethlehem Area Sch. Dist., 521 F. App'x 74, 77 n.1 (3d Cir. 2013).

539 F. Supp. 3d 380, 386 (E.D. Pa. 2021); see also D.P. v. Council Rock Sch. Dist., 482 F.
App'x 669, 671 (3d Cir. 2012) (holding that a school district's obligation to conduct a
reevaluation under 22 Pa. Code § 14.124(b)'s 60-day timeline "is contingent on the parent's
request").  In other words, the 60-day timeline described in 22 Pa. Code § 22.124(b) applies only
where the parent requests a reevaluation.   Thus, two options exist for LEAs conducting a
reevaluation:   (1) conduct a reevaluation at least once every three years; or (2) prior to the
expiration of the three-year reevaluation period, conduct a reevaluation within 60 days of a
parent's request for a reevaluation.

If a parent disagrees with a LEA's evaluation, the "parent has the right to an independent
educational evaluation at public expense."  34 C.F.R. § 300.502(b)(1).  "If a parent requests an
independent educational evaluation at public expense, the public agency must, without
unnecessary delay, either – (i) File a due process complaint to request a hearing to show that its
evaluation is appropriate; or (ii) Ensure that an independent educational evaluation is provided at
public expense."  Id. § 300.502(b)(2)(i)-(ii).

If a LEA files a due process complaint, the matter is referred to a hearing officer for
argument and a decision on the matters asserted in the complaint.    See 20 U.S.C.
§ 1415(f)(1)(A).  Generally, hearing officers may only make decisions on substantive grounds.
See id. § 1415(f)(3)(E)(i).  However:

> In matters alleging a procedural violation [of the IDEA], a hearing officer may
> find that a child did not receive a free appropriate public education only if the
> procedural inadequacies –
>
> (i) Impeded the child's right to a free appropriate public education;
>
> (ii) significantly impeded the parents' opportunity to participate in the
> decisionmaking process regarding the provision of a free appropriate
> public education to the parents' child; or

(iii) caused a deprivation of educational benefits.

Id. § 1415(f)(3)(E)(ii)(I)-(III).

A party aggrieved by the hearing officer's decision may file within ninety (90) days of the hearing officer's decision a civil action in federal court.  Id. § 1415(i)(2)(A)-(B).  A district court "(i) shall receive the records of the administrative proceedings; (ii) shall hear additional evidence at the request of a party; and (iii) basing its decision on the preponderance of the evidence, shall grant such relief as the court determines is appropriate."  Id. § 1415(i)(2)(C).

### B.    Independent Hearing Officer Cheryl Cutrona's Final Decision and Order

On August 11, 2022, a Special Education Hearing Officer described the two issues before her as:

1. Whether the District's reevaluation of the Student comported with all applicable criteria and was appropriate under the law; and

2. If it was not, should the District be ordered to provide an independent educational evaluation of the Student at public expense?

(Doc. No. 11-3 at 3.)   The Hearing Officer also addressed the parents' two claims that the District violated the IDEA's procedural requirements by (1) reevaluating Plaintiff after the three-year deadline and (2) unreasonably delaying its filing of a due process complaint after the parents' request it do so.  (Id. at 14-15.)

The Hearing Officer first held as follows:

The procedural deficiencies alleged by the Parents in relation to the timeliness of the [Reevaluation Report] and the filing of the [due process] Complaint denying the Parents' request for an IEE [("independent educational evaluation")] did not result in a substantive denial of [a free appropriate public education] to the Student nor did they significantly impede the meaningful participation of the Parents.

(Doc. No. 11-3 at 14.)[9]   The Hearing Officer placed particular emphasis on the 60-day timeline provided in 22 Pa. Code §§ 14.123(b), 14.124(b).   Specifically, she found that (1) the District's Reevaluation report was issued fifty-two (52) days after it sent to Plaintiff's parents a Permission to Reevaluate and (2) the District's Amended Reevaluation Report was issued fifty-six (56) days after Plaintiff's parents consented to that reevaluation.   (See Doc. No. 11-3 at 14-15.) Additionally, the Hearing Officer found that the District did not unreasonably delay in filing its due process complaint "because productive discussions and changes to the IEP were being made based on the District's [Reevaluation Report]."   (Id. at 15.)

The Hearing Officer next held that the District's March 30, 2022 Amended Reevaluation Report "was sufficiently comprehensive to identify the Student's special needs."   (Id. at 16.)   In support of her conclusion, the Hearing Officer stated the following:

> The Parents argue that the RR [Reevaluation Report] was not comprehensive because it did not include nonverbal testing or testing to assess the Student's social and emotional skills.   The Hearing Officer finds that the absence of such tests in the RR does not render the RR inappropriate.   The Parents' concern that no nonverbal testing was conducted was adequately explained by the School Psychologist who concluded that it was not necessary because a nonverbal score was included in the WISC-V.   The Parents' concern that there was no social-emotional testing was adequately addressed by the School Psychologist's explanation that portions of the Vineland-3 and Conners-3 have domains that relate to socialization and emotional needs.

(Id.)   The Hearing Officer stated that "[a]ll of this evidence preponderantly supports the conclusion that the District's amended RR was sufficiently comprehensive to identify the Student's special education needs."   (Id.)   As a result, the Hearing Officer held that "the District has met its burden of establishing that its RR met IDEA criteria and served the purposes of a special education evaluation."   (Id.)

---

[9]   The Court reviews de novo the Hearing Officer's legal determinations.

The Hearing Officer made the following findings:

The timeliness of the District's completion of the Student's triennial RR, its denial of the Parent's request for an IEE, and its filing of the due process complaint did not constitute an unreasonable delay, did not result in a substantive denial of FAPE to the Student, and did not significantly impede the meaningful participation of the Parents.  Therefore, no remedy is due based on timeliness issues.

The RR is appropriate because it satisfies the requirements listed in the IDEA. The Parents are certainly free to disagree with the RR and obtain an IEE.  That right is codified into the IDEA.  However, the Parents' right to public funding for an IEE is predicated on a determination that the RR is inappropriate, which, under the law, it is not.  The Parents, therefore, are not entitled to an IEE at public expense.

(Id. at 17.)

### C.   Plaintiff Is Not Entitled to an Independent Educational Evaluation at Public Expense

Again, Plaintiff alleges that the Hearing Officer committed four errors.  First, she argues that the Hearing Officer improperly did not consider (a) the District's School Board Policy 113.3, which covers when the District must respond to requests for an IEE, and (b) the District's Director of Special Education's testimony acknowledging Policy 113.3.  (Doc. No. 1 at 8.) Second, she asserts that the Hearing Officer's finding that "productive discussions and changes to the IEP were being made based on the District's [Reevaluation Report]" was incorrect because her parents "never agreed to any of the IEP changes" and eventually filed a due process complaint.  (Id.)  Third, she argues that the Hearing Officer "failed to consider the District's failure to complete a Reevaluation Report by the triannual due date of December 10, 2021." (Id.)   Fourth, Plaintiff contends that the Hearing Officer's conclusion that no procedural deficiency denied her a free appropriate public education was incorrect.  (Id. at 9.)   These arguments, however, do not establish by a preponderance of the evidence that Plaintiff is entitled to an IEE at public expense.

18

### 1.   The Hearing Officer Did Not Ignore Policy 113.3 or the Testimony of the District's Director of Special Education

Plaintiff alleges that the Hearing Officer erred in "ignor[ing] . . . without justification" in its August 11, 2022 Final Decision and Order the School Board's Policy 113.3, which provides that the District must within ten (10) days of receiving a request for an IEE either grant the request or file a due process complaint.  Plaintiff also argues that the Hearing Officer erred in ignoring the District's Director of Special Education acknowledgement of the Policy.  (Doc. No. 1 at 8.)  Specifically, Plaintiff alleges that since Policy 113.3 is not referred to in the August 11, 2022 Final Decision and Order of Independent Hearing Officer Cutrona, that she ignored the ten-day policy, even though its existence was acknowledged by the Director of Special Education at the hearing.  (Id. at 7-8.)

Plaintiff's position here lacks merit because the Hearing Officer did allow testimony about Policy 113.3 at the hearing and did allow Plaintiff to question the Director of Special Education about the District's compliance with the Policy.  Moreover, Plaintiff has not pointed to anything in the record of the proceedings before the Hearing Officer that contradicts her findings that there was no unreasonable delay and no substantive denial of a FAPE to Plaintiff.

Policy 113.3 was introduced by Plaintiff at the due process hearing.  The written Policy was not allowed in evidence by the Hearing Officer.  But the Hearing Officer did allow testimony on the Policy.  At the hearing, Plaintiff's counsel asked the District's Director of Special Education whether he was involved in promulgating Policy 113.3, and when he said he was not, she showed him Policy 113.3 in an attempt to impeach him.  The following exchange occurred during the due process hearing:

HEARING OFFICER CUTRONA:  I printed off of my copy of the table of contents as of yesterday, late yesterday afternoon, and it was not here.  I do not have a copy of your disclosures.  So I don't know if it was on the disclosures or not, but I am going to sustain the objection.  And we will not be entering this document upon objection.  And -- but I think you can still ask questions about it, or about the policy in general without -- I'll just take this down.  You can ask her about the policy if she knows about it.

. . .

BY MS. METCALFE:

Q.  So let me ask you this, have you -- prior to -- and when you say you weren't aware of that being a policy, have you reviewed that policy prior to today?

A.  I read -- I read that policy a while ago, yes.

Q.  Okay.  And so when we were looking at P-8, did that refresh your recollection?

A.  Yes.

Q.  So the school -- so the school board policy is that the District has to file in 10 school days, correct?

A.  According to that form.

(Id. at 62.)

Plaintiff offers conclusory assertions that the Hearing Officer wrongly excluded from evidence Policy 113.3.  And she offers no support for her further contention that a Hearing Officer may take judicial notice of Policy 113.3.  In any event, testimony about Policy 113.3 and the ten-day requirement in which to file the complaint was allowed at the due process hearing.  In addition, Plaintiff has not shown that the record contradicts the Hearing Officer's factual findings that there was no unreasonable delay and no substantive denial of a FAPE to Plaintiff as a result of the delays Plaintiff relies on.  For these reasons, Plaintiff's argument that the Hearing Officer "ignored" Policy 113.3 and the Director of Special Education's testimony regarding the Policy is without merit.

### 2.  Productive Discussions Occurred Between the District and the Parents

Plaintiff claims that the Hearing Officer's erred in finding that there were productive discussions during the IEP meetings between the District and the parents.  (Doc. No. 17-2 at 5.) Plaintiff asserts that the exact opposite is true:  "the IEE request was made immediately after the IEP meeting on May 9, 2022.  . . .  When there was no response from the District, the parents' counsel emailed on June 1, 2022 regarding the need for an IEP meeting to be scheduled **and** to inquire about the status of the IEE due process complaint."  (Id. at 5-6 (emphasis in original).)

The Hearing Officer's findings regarding the discussions between the District and the parents is limited to the following:

> Several IEP meetings followed with the last proposed draft dated June 6, 2022. . . .  On June 27, 2022, the Parents sent an email suggesting the name of an evaluator to conduct the IEE.
> . . .
> The time the District took before it decided to file a Complaint defending its evaluation of the Student did not constitute an unreasonable delay because productive discussions and changes to the IEP were being made based on the District's RR.

(Doc. No. 11-3 at 15.)  Although the Hearing Officer used the word "productive," it is evident that it was not meant to indicate there was a finalized decision or resolution made.  That was not done here.  But there were productive discussions between the parties.

Based on the undisputed facts and Plaintiff's own filings in this case, Plaintiff requested testing after receiving the District's initial Reevaluation Report dated January 14, 2022 and was asked for input to be included in the development of an IEP for Plaintiff.  Moreover, the parents requested the District conduct a Reevaluation Report and the District did so on March 30, 2022. The parents and the District attended two IEP meetings in which the parents suggested changes to the proposed IEP, which the District incorporated.  One of the changes to the IEP increased

the minutes per week of individualized instruction Plaintiff would receive from 450, from her initial evaluation while in kindergarten, to 1545.  The revised IEP also provided Plaintiff with occupational and speech therapy services.  Other changes to the initial IEP were emailed to the parents and their counsel.

Anytime a meaningful discussion between the District and the parents occurs, it would fall under the rubric "productive."  That is the sense in which the Hearing Officer used the word "productive" in this case.  Plaintiff's argument that the Hearing Officer erred by finding there were productive discussions between the parents and the District therefore is without merit.

### 3. The Hearing Officer's Error in Concluding the District Timely Conducted the January 14, 2022 Reevaluation Did Not Result in Plaintiff Being Denied a FAPE

As stated above, reevaluations under the IDEA must be conducted at least once every three years.  See 20 U.S.C. § 1414(a)(2)(B)(ii); 34 C.F.R. § 300.303(b)(2).  While Pennsylvania has adopted its own sixty (60) day timeline regarding the conducting of reevaluations, the sixty timeline applies to conducting evaluations within sixty days of receiving a parent's request for such an evaluation to be conducted.  See M.Z., 521 F. App'x at 77 n.1.  22 Pa. Code § 14.124(b) does not extend the IDEA's deadline by which a local educational agency ("LEA") must conduct a reevaluation.  Thus, as suggested by the court in M.D., the sixty-day timeline referred to in § 14.124(b) applies to requests by parents for the LEA to conduct a reevaluation before the IDEA's three-year deadline.  Therefore, § 14.124(b)'s sixty-day timeline does not supplant the District's independent requirement that it conduct reevaluations at least once every three years regardless of a parent's request.

The Hearing Officer explained that the District complied with the IDEA's procedural requirements because "the first draft of the RR was issued on January 14, 2022, fifty-two (52)

calendar days" after it sent to the parents its Permission to Reevaluate.  (Doc. No. 11-3 at 14.)

The Hearing Officer also stated that after the parents requested additional testing, the District

sent them "a new Permission to Evaluate and they consented" on February 2, 2022 and issued its

Amended Reevaluation fifty-six (56) days later on March 30, 2022.  (Id. at 14-15.)  Based on the

District's actions, the Hearing Officer concluded that "[b]oth of those timelines meet the sixty-

day requirement in 22 Pa. Code § 14.123(b), 14.124(b).  As such, the Hearing Officer finds no

timeliness issue."  (Id. at 15.)

Plaintiff was evaluated on December 10, 2018, so in accordance with the triannual

reevaluation requirement she had to be reevaluated by December 10, 2021.  She was not

reevaluated until January 14, 2022.  The Hearing Officer therefore erred when it found there was

"no timeliness issue" regarding the District's Reevaluation Report because the reevaluation was

not done with the requisite three-year period.  And "[t]he failure to conduct a requested or timely

reevaluation is a procedural violation of the IDEA."  Herrion v. District of Columbia, 2023 WL

2643881, at *8 (D.D.C. Mar. 27, 2023) (citations omitted).

Because the District did not conduct a reevaluation of Plaintiff within three years of its

December 10, 2018 Reevaluation Report, it committed a procedural violation of the IDEA and

the Hearing Officer's finding that there was "no timeliness issue" was erroneous.  However, as

explained below, not all procedural violations of the IDEA, including this one, constitute a

substantive denial of a FAPE.

Plaintiff asserts that the "District's failure to timely complete the triannual reevaluation

rises to a substantial denial of FAPE as it impeded Parents' ability to timely and meaningfully

participate in the IEP process."  (Doc. No. 17-2 at 9.)  As a result, she claims that the Hearing

Officer "wrongly found the procedural violations did not rise to a substantial denial of FAPE."

(Id. at 1-2.)   However, while the District violated the IDEA's procedural requirements as described supra, not all procedural violations of the IDEA constitute denials of a FAPE.

As the Third Circuit explained in C.H.:

> In some cases, a procedural violation may rise to the level of a denial of a FAPE, entitling the plaintiff to compensatory education or tuition reimbursement. However, "[a] procedural violation of the IDEA is not a per se denial of a FAPE; rather, a school district's failure to comply with the procedural requirements of the Act will constitute a denial of a FAPE only if such violation causes substantive harm to the child or [her] parents." Knable v. Bexley City Sch. Dist., 238 F.3d 755, 765 (6th Cir. 2001) (citations omitted); see also D.S. v. Bayonne Bd. of Educ., [602 F.3d 553, 565] (3d Cir. 2010) ("A procedural violation is actionable under the IDEA only if it results in a loss of educational opportunity for the student, seriously deprives parents of their participation rights, or causes a deprivation of educational benefits.") . . . .

606 F.3d at 66.

Plaintiff has failed to show by a preponderance of the evidence that the procedural violation denied her a FAPE.   Despite Plaintiff's assertions that "[f]ailing to complete a timely reevaluation report, given A.H.'s ongoing needs and struggles . . . severely impaired Parents' ability to meaningfully participate" (Doc. No. 17-2 at 9-10), the record establishes that Plaintiff did not lose an educational opportunity, her parents were meaningfully involved in the IEP decisionmaking process, and Plaintiff was not deprived of educational benefits.

And while Plaintiff asserts that the "District's failure to timely complete the triannual evaluation rises to a substantial denial of FAPE as it impeded Parents' ability to timely and meaningfully participate in the IEP process," (Id. at 9), she offers no support for this contention. Rather, Plaintiff suggests that the substantive denial of a FAPE was because "[r]ather than having an IEP meeting in December 2021 to change A.H.'s program and placement, the IEP was not changed until several months later."   (Id. at 10.)   But Plaintiff identifies no evidence demonstrating how the District's fifty-eight day delay in completing its Reevaluation Report

denied the parents' meaningful participation in the IEP process.  As noted previously, the parents participated in the IEP process in a meaningful way.

Thus, although the Hearing Officer erred when she concluded that the District timely completed its Reevaluation, Plaintiff fails to show that the District's procedural violation of the IDEA deprived her parents of a meaningful opportunity to participate in the IEP process.  Stated differently, Plaintiff has not met her burden of showing that she was denied a FAPE.  Thus, Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) therefore will be denied, and Defendant's Motion for Judgment on the Administrative Record (Doc. No. 16) will be granted.  Consequently, Plaintiff is not entitled to an IEE at public expense.

## IV.    CONCLUSION

For the foregoing reasons, Plaintiff's Motion for Judgment on the Administrative Record (Doc. No. 17) will be denied, and Defendant's Motion for Judgment on the Administrative Record (Doc. No. 16) will be granted.  An appropriate Order follows.